MARY HOAR, admx., *v.* LORRAINE MFG. COMPANY.

JULY 12, 1913.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, and Vincent, JJ.

(1)   *Sales.   Master and Servant.   Assumed Risks.*

A contract between vendor located at X and vendee located at Y, by which vendor was to furnish vendee two boilers at an agreed price, f. o. b. cars at Y, provided, "We (vendor) include in this price service of one man to unload and put in place, you to furnish him all necessary help."—

*Held,* that delivery was made to vendee either when the boilers were delivered to the carrier in X, or when vendee received them upon the tracks at Y, but when they were unloaded at Y, it was incumbent upon vendee to carry them into its works and erect them, and the undertaking remained that of vendee; the vendor merely loaning a man to assist in the work; so where a servant of vendees was injured in the erection, the rules relative to the care due to the servant from the master applied to the case and whether or not in the circumstances vendee negligently disregarded its duty should have been submitted to the jury.

(2)   *Master and Servant.   Loan of Servant.   Assumed Risks.*

*Semble;* although a vendor is under an agreement to erect the subject-matter of the contract upon the premises of the vendee, where the vendee erects the staging and has knowledge of its condition, and a servant of vendee, a common laborer, is ordered by its superintendent to assist in the work, the servant continues in the employ of the vendee, and the master is not released from his obligation to furnish him a safe place to work and to give him notice of the dangers surrounding the work, and the servant cannot be held to have assumed the risks.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of plaintiff and sustained.

SWEETLAND, J.   This is an action of trespass on the case, commenced by the plaintiff as administratrix of the estate of Martin Hoar to recover damages for his death alleged to have been due to the negligence of the defendant.   The case was tried before a justice of the Superior Court sitting with a jury.   At the conclusion of the testimony said justice directed the jury to return a verdict for the defendant.   The case is before us upon the plaintiff's exception to such direction.

It appears from the testimony that upon March 3rd, 1910, the day of the accident hereinafter referred to, the plaintiff's intestate, Martin Hoar, was in the employ of the defendant as a common laborer in its boiler room; shortly before the accident said Martin Hoar was directed by the superintendent of the defendant to assist in the erection of a boiler in the defendant's boiler room. Said boiler was a new upright tubular boiler, about twenty-one feet long, seven feet in diameter, and weighing about sixteen ton, which had been purchased by the defendant, a short time before, from the Stewart Boiler Works of Worcester. Before the operation in question the boiler was lying horizontally upon the floor of said boiler room. For the purpose of raising it to an upright position a movable staging had been erected by the defendant in accordance with a rough sketch drawn by a representative of the Stewart Boiler Works. Said staging was about nine feet square at the base and was constructed by placing a heavy piece or stick of timber, about thirty-two feet long, upright upon the floor at each corner of the square and joining these four sticks or timbers by wooden cross pieces at the bottom and top and by diagonal wooden braces upon three sides of the staging leaving one side, which is called the front, open or unobstructed by cross pieces or braces, except by a cross piece at the bottom and another one near the top. Across the top of the staging were laid timbers around one or more of which was placed an iron yoke to which chain and rope falls were attached, which falls hung down in the center of said staging. The staging when constructed was somewhat over thirty-two feet high and about nine feet square. This staging was placed against the wall of the boiler room at the place where the defendant wished to erect said boiler with the open side facing front or out into the center of the room. The staging was not secured in any way to the wall or to any other part of the building, and was without stays or guys. Its stability was not increased by struts or props braced against the front or sides of the structure; but in that regard it depended entirely upon

the bearing of the four corner posts upon the floor. The boiler, in a horizontal position, was pushed on rollers towards and in between the front posts of this staging until the head, or what would be the top of the boiler when erected, was in the center of the staging directly under said falls. The falls were attached to the head of the boiler, and under the foot of the boiler was placed a shoe upon rollers, which shoe, supporting the foot of the boiler, might be propelled forward by means of a ratchet jack. The head of the boiler was then raised by the falls, the rope falls being operated by a winch and the chain falls directly by hand. As the head was raised the boiler was pushed into the center of the staging by the ratchet jack working upon said shoe. The plan of the operation was to keep the head of the boiler directly in the center of the staging with the falls perpendicular. When, by use of the methods above described, the boiler was nearly upright, the staging fell over toward the front and in falling broke a steam pipe, causing steam to escape in large quantities into the room. The plaintiff's intestate was scalded by this steam and was killed.

(1)   The declaration alleges that said staging was weak and defective; that the defendant was guilty of negligence in putting the plaintiff's intestate at work in a place which was unsafe by reason of said weak and defective staging, and also that the defendant was negligent in not giving the plaintiff's intestate notice of the dangerous conditions surrounding said work.

The defendant claimed that it was not engaged in the erection of said boiler, but that the same was being erected by the Stewart Boiler Works of Worcester, in accordance with a contract between it and the defendant, whereby the said boiler works was to furnish to the defendant two tubular boilers and to take charge of unloading them and putting them in place; that the plaintiff's intestate, although in the general service of the defendant was, while assisting in the erection of said boiler, in the special service of said boiler works, having been loaned by the defendant to the boiler

works for that purpose. If the provisions of the contract between the Stewart Boiler Works and the defendant were as the defendant claimed, nevertheless, in the other circumstances of the case, the plaintiff's intestate would be held to have continued in the employ of the defendant and the defendant would not be released from its obligation to furnish said Martin Hoar a safe place in which to work during the erection of said boiler and to give him notice of the dangers surrounding said work. Such dangerous condition, if it existed, the defendant in the exercise of ordinary care would have known, for it erected the staging, placed it in position, and knew of its condition as to stability. All of which Martin Hoar, a common laborer, just called to the work, cannot be held upon the testimony to have understood, or to have assumed the risk of which. However, a consideration of these questions is not in point for it appears clear to us that the defendant has not correctly stated the effect of the contract between the defendant and said boiler works. This contract is contained in letters between the defendant and (2) the boiler works by which the boiler works contracted to furnish to the defendant two vertical tubular boilers of certain dimensions with certain appliances for "$1900 each f. o. b. cars Saylesville." And the Stewart Boiler Works further agreed as follows: "We include in this price service of one man to unload and put in place, you to furnish him all necessary help." By this last provision of the contract the defendant claims that the Stewart Boiler Works contracted to unload said boilers in Saylesville and to erect them at the defendant's factory. This is not a proper interpretation of the terms of the contract. The delivery of the boilers to the defendant must be held to have been made either when the boiler works delivered them to the carrier in Worcester or when the defendant received them upon the tracks at Saylesville. When the boilers were unloaded at Saylesville, it was incumbent upon the defendant to carry them into its works and there to erect them when and where it wished.

The Stewart Boiler Works did not agree to unload said boilers and put them in place, but to furnish to the defendant the service of one man to assist the defendant in so doing.    If this man, presumably an expert in such matters, had special knowledge of the work, the defendant naturally would rely upon him and place him in charge; but the undertaking remained that of the defendant.    The true situation was the loaning of a man by the boiler works to the defendant to assist it in erecting its boilers, and not, as the plaintiff claims, the loan by the defendant to the boiler works of Martin Hoar and other of its workmen to assist in an operation which it was the duty of the boiler works to perform.

This case, therefore, presents the ordinary questions of the care which a master owes to his workman, unconnected with any consideration of the position and rights of a servant whose services have been loaned by his master to an independent contractor.

It is the duty of a master to furnish his servant with a reasonably safe place in which to work and with reasonably safe appliances.    It is also the duty of a master to warn him of the dangerous condition of the work, if that is unknown to the servant.    Whether or not in the circumstances of this case the defendant negligently disregarded its duty to said Martin Hoar in these particulars should have been submitted to the jury.

The plaintiff's exception is sustained and the case is remitted to the Superior Court for a new trial.

*Irving Champlin, Gorman, Egan & Gorman,* for plaintiff.

*Gardner, Pirce & Thornley,* for defendant.    *William W. Moss,* of counsel.